**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

ANTHONY WRIGHT,

    Plaintiff,

v.

OFC. LESLIE TAYLOR, in her individual capacity,
SGT. ALAN FUSTINI, in his individual capacity, and
SGT. LEONARD JONES, in his individual capacity,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Anthony Wright, by and through his counsel, Michael Fairhurst and Mari Newman of KILLMER, LANE & NEWMAN, LLP, hereby submits his Complaint and Jury Demand, and states as follows:

### I.    INTRODUCTION

1. On February 7, 2019, the Defendants unnecessarily and repeatedly tasered Plaintiff Anthony Wright mere moments after he had suffered a seizure. Still incapacitated from the seizure, Mr. Wright clearly was not resisting or posing a threat to anyone. He obviously was helpless, stunned, and in need of immediate medical aid.

2. Nonetheless, Defendant Correctional Officer Leslie Taylor deliberately tasered Mr. Wright, in response to Defendant Sergeant Alan Fustini's manifestly unlawful order to taser a nonthreatening, defenseless, and ailing man.

3. Then, Defendant Sgt. Leonard Jones doubled down on his Co-Defendants' gratuitous abuse of still-incapacitated Mr. Wright by intentionally brutally tasering him *again* without any conceivable justification.

4. Defendants unnecessarily and wantonly inflicted pain and serious injuries on Mr. Wright sadistically, and for the very purpose of causing him harm.

5. Because of Defendants' excessive use of force, Mr. Wright sustained serious physical and other injuries, including but not limited to severe pain, suffering and terror, burns and burn marks, severe anxiety, and ongoing loss of sleep.

6. During the events underlying this case, Mr. Wright was incarcerated at the Fremont Correctional Facility ("FCF"). Mr. Wright brings this action for damages and other relief against Defendants Taylor, Jones, and Fustini for violating his clearly established constitutional right to be free from excessive force under the Eighth Amendment to the United States Constitution.

## II. JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

8. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

9. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391. Plaintiff is a resident of and domiciled in the State of Colorado. All of Defendants' conduct alleged herein occurred within the State of Colorado. At all times relevant hereto, Defendants acted under color of state law as Colorado Department of Corrections ("CDOC") employees and/or agents.

### III.     PARTIES

10. Plaintiff Anthony Wright is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado and incarcerated in the Fremont Correctional Facility.

11. Defendant Leslie Taylor was a correctional officer working at Fremont Correctional Facility during the events underlying this case. At all relevant times, Defendant Taylor acted under color of state law for the State of Colorado as a CDOC employee and/or agent. At all relevant times, Defendant Taylor was a citizen of the United States and a resident of and domiciled in Colorado.

12. Defendant Alan Fustini was a Sergeant working at Fremont Correctional Facility during the events underlying this case. At all relevant times, Defendant Fustini acted under color of state law for the State of Colorado as a CDOC employee and/or agent. At all relevant times, Defendant Fustini was a citizen of the United States and a resident of and domiciled in Colorado.

13. Defendant Leonard Jones was a Sergeant working at Fremont Correctional Facility during the events underlying this case. At all relevant times, Defendant Jones acted under color of state law for the State of Colorado as a CDOC employee and/or agent. At all relevant times, Defendant Jones was a citizen of the United States and a resident of and domiciled in Colorado.

### IV.     FACTUAL ALLEGATIONS

14. On the morning of February 7, 2019, a prisoner unjustifiably attacked Plaintiff Anthony Wright from behind while they were in an FCF dining hall.

15. Mr. Wright reflexively attempted to defend himself against the prisoner's unprovoked ambush.

16. In response to the altercation, Defendants Taylor and Jones fired their tasers (in probe mode) at Mr. Wright and his attacker. Both tasers hit their targets and immediately debilitated both men, quickly putting an end to the skirmish.

17. More specifically, Defendant Taylor fired her taser at Mr. Wright. The prongs struck and embedded themselves in the middle of his back and top of his head.

18. A few seconds after Defendant Taylor first tasered Mr. Wright, he began suffering a seizure and convulsing on the ground. At the time, he was lying flat on his back with his arms raised above him, both of which were involuntarily and spastically shaking in the air. Blood quickly pooled around Mr. Wright's head. His face became bloodied.

19. It was obvious that Mr. Wright was having a seizure and needed medical attention immediately.

20. Shift Commander Lt. Ryan Bezona, recognizing Mr. Wright's seizure and his need for immediate medical treatment, called for medical assistance.

21. Other officers on scene also recognized that Mr. Wright was having a seizure and needed immediate medical help.

22. For their part, prisoners in the dining hall called out to the officers and told them that Mr. Wright was having a seizure and/or urgently needed medical attention.

23. Prisoners also urged prison staff to remove the taser prongs that were still visibly embedded in Mr. Wright's flesh, including in his head. A female officer believed to be Defendant Taylor falsely claimed that she had already removed the prongs. The truth is that a taser prong obviously remained lodged in Mr. Wright's head at the time.

24. Once Mr. Wright stopped violently convulsing from his seizure, Lt. Bezona rolled him onto his right side. Mr. Wright was still unconscious or just barely conscious at the time. A taser prong obviously remained lodged in the top of his head.

25. At about the same time, the prisoner who attacked Mr. Wright was fully restrained, fully controlled, and removed from the scene. Any arguable threat to safety, security, and the like presented by Mr. Wright's attacker and/or Mr. Wright clearly had been eliminated and was completely gone.

26. As Mr. Wright very slowly began to recover from his seizure, he started attempting – unsuccessfully – to push himself up and, in the process, he rolled onto his front side.

27. Lt. Bezona then easily rolled him back onto his side. At the time, Mr. Wright still obviously was extremely disoriented, scared, physically weak, and unable to volitionally comply – or not comply – with any commands as a result of the lingering effects of his recent seizure. He clearly was still incapacitated and almost completely helpless because of his medical condition.

28. In fact, Mr. Wright obviously could not even talk; he was just making loud moaning noises at the time, which further conveyed that he was in grave distress, confused, and terrified because of his medical condition.

29.     Shortly thereafter, a male jail staff yelled, "Guys, can you fuckin' help me here?! Jesus!" This is believed to be Lt. Bezona.

30.     In response, Officer Steven Goodell joined Lt. Bezona and pinned down Plaintiff's right arm and side while Lt. Bezona pinned down Plaintiff's left arm and side, using their body weight to do so.

31.     A few seconds later, Defendant Fustini arbitrarily told Defendant Taylor to taser Plaintiff in drive stun mode.

32.     Defendant Taylor complied with Defendant Fustini's manifestly unlawful order and deliberately delivered an excruciating drive stun taser shock to Mr. Wright lower calf. This inflicted significant physical and other injuries on Mr. Wright.

33.     At the time, Mr. Wright clearly did not pose a threat to anyone. Two correctional officers were already physically restraining Mr. Wright and forcing him to the ground when Defendant Taylor tasered his leg.  Numerous other officers also surrounded Mr. Wright, pinning him into a narrow corner of the room.

34.     Moreover, Mr. Wright clearly was not acting volitionally, and was not intentionally failing to comply with any order at the time. He obviously had just suffered a seizure and obviously was still incapacitated and stunned from the recent seizure.

35.     Also, Mr. Wright was clearly incapable of attempting to flee from the scene. He plainly could not even stand up on his own.

36.     There existed no legitimate penological basis for subjecting Mr. Wright to any physical force when Taylor tasered his leg, much less the very significant force and resulting physical injuries inflicted by a taser. Defendant Taylor had drawn this conclusion and was aware

6

of all the facts supporting this conclusion when she tasered Mr. Wright. She tasered Mr. Wright unnecessarily, sadistically, wantonly, and for the very purpose of causing him harm.

37. About 20 seconds after Defendant Taylor unnecessarily tasered Mr. Wright, and while two officers were still pinning Mr. Wright under their bodyweight, Defendant Jones deliberately tasered Mr. Wright yet again, in drive stun mode. He did so unnecessarily, sadistically, wantonly, and for the very purpose of causing him harm.

38. Defendant Jones' taser discharge caused additional excruciating pain, other physical injuries, and terror to Mr. Wright.

39. When Defendant Jones tasered Mr. Wright, he was still incapacitated from his recent seizure. Defendant Jones knew this. Defendant Jones likewise knew that Mr. Wright did not pose a threat to anyone, as he two officers already were physically restraining and controlling him, and he was not intentionally failing to comply with any command. He was obviously still in a stupor because of his recent seizure and could not even stand up independently. He obviously needed medical attention, not further trauma unnecessarily inflicted upon him, as the Defendants had just done.

40. At some point around the Defendants' illegal tasering of Mr. Wright, at least Defendant Fustini further restrained Mr. Wright by chaining his legs in leg restraints.

41. Officers then restrained Mr. Wright even more with handcuffs and a belly chain as he screamed in terror.

42. While handcuffing Mr. Wright, an officer unnecessarily and sadistically inflicted additional pain and injuries by intentionally forcefully contorting the pinky on his left hand, causing it to fracture. Mr. Wright was not intentionally resisting or otherwise intentionally failing

7

to comply with commands at the time. There plainly was no penological justification for subjecting Mr. Wright to this very significant level of force.

43.     Next, officers picked Mr. Wright up and strapped him into a restraint chair, strapping multiple chains and restraints around him to contain him in the chair and limit his movement. Mr. Wright was still clearly helpless, confused, and disoriented and did not pose any threat at this time too – as had always been the case once he suffered the seizure.

44.     Throughout this entire incident, spanning almost twenty minutes after Taylor first tasered Mr. Wright, the taser prong remained visibly lodged in Mr. Wright's skull. No one had the basic decency to remove it. This underscores the Defendants' deliberate indifference – and fundamental lack of humanity – towards Mr. Wright.

45.     The CDOC subsequently conducted an after-action review of the Defendants' (and others') use of force on Mr. Wright. The CDOC concluded that Defendants Jones, Taylor, and Fustini all had behaved improperly and violated CDOC policy. More specifically, the CDOC concluded that there were many deficiencies identified in this incident.

46.     Regarding Defendant Fustini, the CDOC found that Fustini's directive to a subordinate to subject Mr. Wright to a taser in stun mode violated department procedure, especially given that Fustini was not even trained on how to properly use tasers. The CDOC also concluded that Fustini's decision to stand on the chain portion of Mr. Wright's leg restraints, regardless of the reason, was contrary to departmental procedure and training.

47.     The CDOC also rebuked both Defendant Taylor's and Defendant Jones's use of their tasers as drive stun devices to, according to them, immobilize Mr. Wright even though tasers in drive stun mode do not cause neuro-muscular incapacitation but, instead, only pain. As

a result, the CDOC recommended that Taylor and Jones receive remedial taser training as soon as possible.

48. However, consistent with the CDOC's standard operating procedure of whitewashing and covering up its correctional officers' abuse of people in its custody, the CDOC review wrongly concluded that the Defendants had used appropriate force on Mr. Wright, despite Defendants having tasered him multiple times while he was obviously incapacitated from a seizure and not posing a threat to anyone (which was clearly captured on body cam footage available to the CDOC).

49. As further evidence of a coverup, security personnel took photos of the injuries the prisoner who attacked Mr. Wright suffered in connection with the altercation that prisoner initiated. Conversely, the CDOC failed to take a single picture of Mr. Wright's obvious and serious physical injuries, many of which the Defendants had inflicted on him.

50. As a result of Defendants' described illegal conduct, Plaintiff sustained serious injuries, including but not limited to severe pain, burns, burn marks, terror, anxiety, and sleeplessness.

51. Plaintiff has fully, properly, and timely exhausted all available administrative remedies in connection with the events described herein.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Eighth Amendment Violation – Excessive Force

52. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53. Defendants' actions as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the United States Constitution, including his right to be free from excessive force, as guaranteed by the Eighth Amendment.

54. On February 7, 2019, Defendants unreasonably reacted to Plaintiff's decidedly non-threatening conduct (having a seizure he could not control) with a violent physical response that amounted to unnecessary and wanton infliction of pain and other injuries. Defendants engaged in uses of force that were manifestly unjustified in light of the facts and circumstances confronting them, violating Mr. Wright's Eighth Amendment rights.

55. Defendants acted maliciously, sadistically, and for the very purpose of causing Mr. Wright harm, as there was no acceptable disciplinary purpose for their use of force on him, given that Mr. Wright was not, and obviously could not, act in any way that significantly diminished or threatened to significantly diminish order or safety.

56. The severity of Defendants' response to subdue Mr. Wright's harmless actions resulting from his recent seizure was grossly excessive.

57. Defendants' actions were taken with deliberate indifference to Mr. Wright's clearly established constitutional rights.

58. Defendants intentionally, knowingly, and maliciously assaulted Plaintiff in a manner that made severe injury likely and reasonably foreseeable, and in fact caused Plaintiff severe physical and other injuries.

59. Defendants' conduct violated Plaintiff's constitutional rights so as to directly and proximately cause Plaintiff to sustain significant injuries, damages, and losses due to their unnecessary and wanton infliction of pain on Plaintiff.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including but not limited to the following:

a. Declaratory and injunctive relief, as appropriate;

b. Compensatory damages, including but not limited to, those for past and future pecuniary and non-pecuniary losses, physical harm, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

c. Actual economic damages as established at trial;

d. Punitive damages for all claims as allowed by law in an amount to be determined as trial;

e. Pre-judgment and post-judgment interest at the highest lawful rates;

f. Attorney fees and costs associated with this action as allowed by law; and

g. Such further relief this Court deems proper, or as required by justice.

## VII.  REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial to a jury on all issues so triable.

Respectfully submitted this 2nd day of February 2021.

<div style="margin-left:50%">

KILLMER, LANE & NEWMAN, LLP

*s/ Michael Fairhurst*
Michael Fairhurst
Mari Newman
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
mfairhurst@kln-law.com
mnewman@kln-law.com

*Attorneys for Plaintiff*

</div>